CHARLES ROMAINE TATE, Plaintiff-Appellee, *v.* WANDA COONCE, d/b/a
J & W Pit Stop, Defendant-Appellant.

Third District    No. 80-533

Opinion filed June 4, 1981.

Raymond J. Conklin, of Klockau, McCarthy, Lousberg, Ellison & Rinden, of Rock Island, for appellant.

M. Michael Waters, of Smith, Moos, Schmitt & O'Brien, Ltd., of Peoria, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

Plaintiff brought suit under the Illinois Dramshop Act for damages arising from personal injuries incurred from an assault by an "allegedly intoxicated person" (AIP). It is alleged that John Coonce became intoxicated at a tavern operated by his wife, the defendant herein. A jury in the Circuit Court of Peoria County returned a verdict for plaintiff in the amount of $30,961 which was reduced to the statutory limit of $15,000. Judgment on the verdict was entered thereon and defendant has ap-

pealed, contending the trial court erred in refusing to allow defendant to raise the affirmative defense of provocation for the first time on the day of trial. The defendant also raises other issues regarding the propriety of the trial court's rulings on the admissibility of certain evidence dealing with such questions as the sale of beer to persons other than the AIP, prior altercations between the plaintiff and the AIP, plaintiff's physical condition subsequent to the injurious occurrence, etc.

The case was filed on January 18, 1977. Defendant filed a motion to strike, which was granted on March 25, 1977. Plaintiff filed an amended complaint on April 14, 1977. Defendant filed a combined answer and motion to dismiss, with the motion to dismiss being granted on June 10, 1977.

On January 7, 1980, the plaintiff filed a motion to amend his complaint. No objection or request for continuance was made by the defendant, and the amendment was allowed on January 22, 1980. Thereafter, the defendant filed a motion to strike on January 29, 1980. The defendant never called up the motion to strike prior to the commencement of trial and the motion was heard and denied in chambers prior to trial. On February 1, 1980, the plaintiff moved to amend his complaint by striking all claims for lost earnings. The defendant voiced no opposition to the amendment, and it was granted.

On February 11, 1980, the day of trial, the plaintiff filed a motion *in limine* asking that an order be entered precluding evidence of an alleged scuffle between the plaintiff and the defendant at a time and place remote from the assault of John Coonce on the plaintiff which was the subject matter of the complaint, and said motion was granted. After the motion was granted there was a discussion between the court and counsel regarding this ruling. The record does not reflect a motion on the part of the defendant to amend his answer to raise the affirmative defense of provocation. Apparently this was discussed in a conference which was held off the record, because at one point the trial judge indicated a willingness to allow such an amendment. However, after consideration the trial judge indicated he would not permit the defendant to raise the affirmative defense of provocation. No copy of the proposed amendment raising this defense was presented to the trial court.

After four jurors were sworn, it was discovered that the defendant had not answered the complaint as amended. The trial court noted that the complaint in its final form differed from the amended complaint filed on April 14, 1977, only in that paragraph 3 had been amended to allege a sale of beer to cohorts of John Coonce with the knowledge that John Coonce would consume the beer. The court observed that the defendant's answer to the complaint filed on April 14, 1977, admitted paragraphs 1 and 2 and denied all of the remaining paragraphs, including paragraph 3.

As paragraphs 1 and 2 remained unchanged, the trial court ordered that the defendant's previous answer admitting those paragraphs, but denying the balance of the complaint, would stand as the defendant's answer.

■■ Defendant argues that the provisions of section 46 of the Illinois Civil Practice Act providing in part that amendments to pleadings may be made "at any time before final judgment" enable her to wait three years to raise on the day of trial, an affirmative defense of provocation in a dram shop case founded upon an AIP's assault of plaintiff. We disagree. Section 46 also provides that such amendments must be on "just and reasonable terms." (Ill. Rev. Stat. 1979, ch. 110, par. 46.) We believe it is both unjust and unreasonable to allow a litigant to wait for years to raise a surprise defense on the day of trial.

■■ It is clear that the allowance of amendments falls within the discretion of the trial court and that absent a showing of manifest abuse of discretion, the decision of the trial court should not be upset. *Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 335 N.E.2d 10; *Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 280 N.E.2d 437.

■■ ■ Furthermore, the failure of the defendant to make his proposed amendment a part of the record deprives this court of any factual basis upon which to find that there was a manifest abuse of discretion below. It has been held that failure to make a proposed amendment part of the record precludes a finding that denial of leave to amend was a manifest abuse of discretion. *Hassiepen v. Marcin* (1974), 22 Ill. App. 3d 433, 318 N.E.2d 162.

■■ The defendant further contends that it was error to permit the plaintiff to introduce evidence regarding the purchase of beer by third parties. Such evidence would normally be considered irrelevant, if not properly connected to the question of the source of the intoxicants furnished plaintiff's assailant.

The evidence showed that the AIP, John Coonce, and four others spent the afternoon in a garage located 30 to 40 feet from the defendant's tavern. Testimony showed that the five of them consumed four cases of beer in approximately equal shares. The defendant knew that her husband's group had at various times drunk beer in the garage, and had on occasion supplied kegs of beer to be drunk in the garage. On other occasions John Coonce had taken beer from the tavern to the garage with his wife's knowledge.

On the day in question various members of the group in the garage made trips to obtain beer. The defendant knew all of them and knew they were part of the "pit crew" or group that worked with her husband on his race car. It took only three to four minutes when someone left to obtain the beer. Except for the defendant's bar, the nearest place to obtain beer was 2½ blocks away. One member of the group testified to personally

making one or two trips to defendant's bar to obtain beer to be drunk that day by the men working in the garage. He bought the beer from the defendant, Wanda Coonce. After consuming all of the beer in the garage, John Coonce went into his wife's bar and consumed 10 to 12 more beers.

The Dramshop Act (Ill. Rev. Stat. 1975, ch. 43, par. 135) provided that "Every person who is injured in person or property by any intoxicated person, has a right of action in his own name, severally or jointly, against any person who by selling or giving alcoholic liquor, causes the intoxication of such person."

The operable act for a dramshop action is simply a sale which causes the intoxication of a person and the injury by that intoxicated person of another person or property. The statute itself contains no language requiring that the sale of liquor be made directly to the AIP.

It has long been judicially recognized that there is no requirement for a direct sale in these cases. In *Bennett v. Auditorium Building Corp.* (1939), 299 Ill. App. 139, 19 N.E.2d 626, one person bought drinks for himself and the alleged intoxicated person (AIP). The tavernkeeper had reason to know that the AIP would consume a portion of the alcohol. Accordingly, the court rejected the defendant's contention that there was no cause of action because of the absence of a direct sale, noting at page 628, "The section does not provide that the selling or giving must be *to* the intoxicated person, * * *." (Emphasis supplied.)

The requirement for pleading an indirect sale is set forth very clearly in *Bell v. Poindexter* (1949), 336 Ill. App. 541, 84 N.E.2d 646. *Bell* holds that a good action is stated where it is alleged that the defendant knew or should have known that the AIP would consume a portion of the liquor purchased. This is precisely what was alleged and proved in the case at bar.

The defendant attempts to distinguish *Bell* from the case at bar by emphasis on the fact that the *Bell* complaint alleged that the sale was made in the presence of the AIP, whereas in the case at bar, the AIP was not present for the sale of any of the beer which was consumed in the garage.

The presence of an AIP with the buyer at the time a sale is made would, of course, be evidence that the seller knew or had reason to believe the AIP would consume part of the alcohol. However, it is not the exclusive method of proving such knowledge. The focus in *Bell* is on the knowledge of the seller, not the presence of the AIP. The place of consumption of the alcohol is also "immaterial." *Bell*, at 648.

The trial court, therefore, properly allowed the introduction into evidence of sales of alcoholic liquor to third persons when the defendant had reason to know that they were being supplied in part to her husband.

The defendant further contends the trial court erred in permitting

plaintiff to testify as to prior occurrences where, as a result of the AIP's drinking, he had become violent and struck the plaintiff.

Plaintiff testified that he had known the AIP, Coonce, for approximately 10 years and that Coonce acted differently when he was intoxicated than when he was not, *i.e.*, when Coonce was intoxicated, he was loud, boisterous and mean.

As foundation of the plaintiff's ability to ascertain whether or not John Coonce was intoxicated, the plaintiff testified to the behavioral changes in Coonce's conduct on two specific occasions when Coonce had been drinking for long periods of time and was intoxicated.

■■ There is no disagreement between the parties as to the rule of law that a witness, after a proper foundation has been established, can testify as to his opinion regarding the state of intoxication of someone else. (See *Grant v. Paluch* (1965), 61 Ill. App. 2d 247, 210 N.E.2d 35; *Vandeveer v. Preston* (1957), 13 Ill. App. 2d 29, 140 N.E.2d 521.) The critical point here is that there must be sufficient evidence to demonstrate the plaintiff's competency to render such an opinion.

■■ Competency to render an opinion on the intoxication of another depends on the observations and experience of the witness. In the case at bar, the plaintiff's ability to observe was limited. After the two men encountered each other there was a very short conversation before Coonce assaulted plaintiff. Considering the limited period of observation, plaintiff's experience involving Coonce's past intoxication was an important foundation for his opinion on intoxication on the day in question.

■■ Generally, it is within the discretion of the trial court as to what constitutes a sufficient basis for a nonexpert to render an opinion based on intoxication. Analogously, the Illinois Supreme Court has ruled that unless there is an abuse of discretion, the determination of the trial court regarding a nonexpert's opinion concerning the mental capacity of a decedent would not be upset. *Anthony v. Anthony* (1960), 20 Ill. 2d 584, 170 N.E.2d 603.

■■ ■ Our courts have long recognized that it is a matter of common knowledge that all alcoholic liquors are intoxicating to varying degrees and that the effect of alcohol upon all persons is not the same, but may be widely different. (*Osborn v. Leuffgen* (1942), 381 Ill. 295, 45 N.E.2d 622; *Nystrom v. Bub* (1962), 36 Ill. App. 2d 333, 184 N.E.2d 273.) Therefore, such evidence was properly admitted for the limited purpose of enabling plaintiff to detail the effects of alcohol on John Coonce, the AIP, as foundation of his opinion on intoxication. Such testimony would not, as defendant correctly contends, be admissible to prove that because the AIP had attacked plaintiff before, he was therefore likely to do it again. (*Herget National Bank of Pekin v. Johnson* (1974), 21 Ill. App. 3d 1024, 316 N.E.2d 191.) Such evidence is admissible for the limited purpose to

show the AIP's state of mind, motive, intent, habit, pattern, or plan. Gard, Illinois Evidence Manual Rule 88 (1963).

■■ Assuming *arguendo* that the evidence of John Coonce's prior conduct while intoxicated was improperly admitted, there still remains the question of whether such error would constitute grounds for reversal. Based on the facts of this case it would not. Harmful error generally exists when improperly admitted evidence is so pursued or is such a nature that it influences a verdict by an appeal to passion. *Gilberto v. Nordtvedt* (1971), 1 Ill. App. 3d 677, 274 N.E.2d 139.

The record is clear that the plaintiff did not pursue this evidence in an attempt to improperly influence the jury. The evidence was adduced to provide foundation; when that was accomplished, plaintiff ceased that line of questioning and did not further pursue it in questioning or in argument. There is nothing in the record to support a finding that the passions of the jury were influenced and accordingly there is no basis for overturning the verdict of the jury.

■■ During the course of the trial the plaintiff testified that he noticed that since the incident of his beating at the hands of the AIP, his lower dentures would not stay in place. The defendant's objection to this testimony was overruled. The thrust of the defendant's objection is that somehow the plaintiff crossed into a field reserved for medical experts when he testified on this point. The plaintiff argues that he or any layman is competent to testify to what they actually notice about their bodies. To suggest that the plaintiff would have to be qualified as an oral surgeon to testify that he has trouble keeping his lower plate in place is without merit.

While defendant may have been correct in an objection to plaintiff's theory of the cause of his problem, it must be noted that the thrust of his objection was that the plaintiff wasn't qualified to testify to the problems he was having with the dentures.

The plaintiff was entitled to testify as to the problem he was having with his dentures and it was for the trier of fact, in this case the jury, to determine whether a problem in fact existed, and if so, what was the cause.

During the trial the plaintiff testified that prior to the time he was assaulted by John Coonce his face had been skinned up, some teeth had been broken, and his face had at one time been swollen.

■■ Defendant's counsel wished to present testimony by John Coonce that the plaintiff had previously stated that he had broken his jaw. This testimony could have no relevance unless the defendant could produce medical evidence showing a causal relationship between any previous injuries and those conditions for which the plaintiff sought recovery. *Greim v. Sharpe Motor Lines* (1968), 101 Ill. App. 2d 142, 242 N.E.2d 282;

*Marut v. Costello* (1964), 53 Ill. App. 2d 340, 202 N.E.2d 853; *Caley v. Manicke* (1961), 29 Ill. App. 2d 323, 173 N.E.2d 209.

Defense counsel conceded that he could not produce medical proof of a causal relation between the injury complained of and a previous incident and informed the court that his intent was simply to show prior disfigurement.

Defendant's complaint now is that he was not allowed to have a witness testify that at an earlier time the plaintiff stated that he thought he might have broken his jaw. Defendant conceded that there was no medical evidence to link any prior injury to the plaintiff's current complaint, and we believe this evidence was properly excluded. It should be noted that the defendant was permitted to put in evidence of prior disfigurement, but was only prohibited from introducing evidence that had no relevance due to the lack of connective medical testimony.

As the evidence went to an issue not properly before the jury, it was collateral. The defendant was properly restrained in her efforts to impeach in a collateral issue. *Ray v. Cock Robin, Inc.* (1973), 10 Ill. App. 3d 276, 293 N.E.2d 483, *aff'd* (1974), 57 Ill. 2d 19, 310 N.E.2d 9.

■■ Prior to the commencement of trial, the court granted the plaintiff's motion *in limine* precluding the introduction of evidence of an alleged scuffle between the plaintiff and the defendant, Wanda Coonce. The defendant apparently wished to introduce such evidence so as to portray revenge as the cause of John Coonce's attack on the plaintiff. The testimony at trial showed that John Coonce's knowledge of the alleged incident between his wife and the plaintiff had little if anything to do with him striking the plaintiff. John Coonce attributes the attack to plaintiff calling him a liar.

We believe that the trial court properly excluded such collateral evidence.

For the foregoing reasons, the decision of the Circuit Court of Peoria County is affirmed.

BARRY and HEIPLE, JJ., concur.