DONALD B. DICK, Indiv. and as Special Adm'r of the Estate of Donna S. Dick, Deceased, Plaintiff-Appellee, *v.* AHMET O. GURSOY, Defendant-Appellant.

Second District   No. 83—335

Opinion filed May 9, 1984.—Supplemental opinion filed on denial of rehearing July 20, 1984.

186

John R. Garofalo, of Kiesler & Berman, of Chicago, for appellant.

William D. Maddux, Bruce M. Lane, and Steven K. Jambois, all of William D. Maddux & Associates, of Chicago, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

On this appeal of a medical malpractice case from the circuit court of Lake County, defendant-physician seeks reversal based upon a statute of limitations defense or, failing that, a set-off from the judgment against him in the amount of the settlement reached by his codefendants. Defendant's failure to plead the defense prevents reversal, but we do grant the set-off.

Plaintiff's wife, Donna S. Dick, filed this action on February 14, 1979, against five physicians and a hospital, alleging negligent misdiagnoses and treatment of her cancer. Defendant Ahmet O. Gursoy, the appellant here, was the first doctor Mrs. Dick consulted, on January 12, 1974, about a lump on her back, which he mistakenly diagnosed as a floating rib. After Mrs. Dick's death from cancer on November 4, 1980, her husband Donald B. Dick became the party of record and amended the complaint to add wrongful death counts against each of the defendants.

When the case came to trial in January 1983, only the counts against Gursoy were tried, the other parties apparently having reached a settlement. The jury found for plaintiff on both counts and awarded $100,000 for wrongful death and $200,000 for the survival action. After judgment was entered upon the verdicts, Gursoy moved for a set-off of $260,000, the amount of the settlement. The trial court, pursuant to plaintiff's petition, approved the settlement as being in exchange for plaintiff's covenants not to sue regarding only the wrongful death counts against Gursoy's codefendants. The court approved the voluntary dismissal of the survival counts against the codefendants. A set-off was granted, therefore, only with regard to the $100,000 wrongful death verdict.

Gursoy first contends that the trial court erred in denying him leave to amend his answer to include an affirmative defense based upon the statute of limitations. The record contains the following interchange between defense counsel and the trial judge:

"MR. GAROFALO: One other thing for the record. I don't know if the Court Reporter got my motion to file this Second Affirmative Defense.

THE COURT: Right. I frankly think at this point and posture of the case it's untimely and denied, and for a number of other reasons which I don't want to go into at this point."

This is the only reference in the transcript to Gursoy's attempt to plead this defense, and the common law record does not contain the proposed amended pleading.

■ A trial court has broad discretion in motions to amend pleadings prior to the entry of final judgment, and the denial of a motion to amend will not be regarded as prejudicial error unless there has been a manifest abuse of such discretion. (*Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151.) It has been frequently held that a trial court cannot be said to have abused that discretion where the proposed amendment has not been submitted to the court or made a part of the record. (*Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1; *Tate v. Coonce* (1981), 97 Ill. App. 3d 145, 421 N.E.2d 1385; *Volvo of America Corp. v. Gibson* (1980), 83 Ill. App. 3d 487, 404 N.E.2d 406; *Ochoa v. Maloney* (1979), 69 Ill. App. 3d 689, 387 N.E.2d 852.) Gursoy points to the quoted interchange as evidence in the record that the trial court knew of the existence of the motion to amend. However, the reviewing court itself is powerless to review the trial court's exercise of discretion when the proffered amendment is not included in the record on appeal. (*Lowrey v. Malkowski* (1960), 20 Ill. 2d 280.) Thus, the record here does not permit our consideration of Gursoy's first contention.

■ Gursoy secondly contends that the trial court erred in not granting him a directed verdict at the end of plaintiff's case or, in the alternative, a judgment notwithstanding the verdict. He bases this contention on the assertion that his statute of limitations defense was conclusively proven at trial. However, as we just discussed, Gursoy was unsuccessful in his attempt to amend his answer to include this affirmative defense. The Code of Civil Procedure requires that affirmative defenses be plainly set forth in the answer or reply. (Ill. Rev. Stat. 1981, ch. 110, par. 2—613(d), formerly codified as par. 43(4).) It is well established that a defense not properly pleaded is deemed waived even though it may appear to be within the evidence. (*Culligan Rock River Water Conditioning Co. v. Gearhart* (1982), 111 Ill. App. 3d 254, 443 N.E.2d 1065; *M. Loeb Corp. v. Brychek* (1981), 98 Ill. App. 3d 1122, 424 N.E.2d 1193.) Although some exceptions to this rule exist (see *Tarzian v. West Bend Mutual Fire Insurance Co.* (1966), 74 Ill. App. 2d 314, 221 N.E.2d

293, where the defense is introduced by the defendant's adversary and the defendant prior to trial did not have the information enabling him to plead the defense; *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223, where the defense is raised in a motion for summary judgment), no applicable exception has been suggested here. Since we must affirm the trial court's denial of Gursoy's motion to amend the answer, we hold that Gursoy was not entitled to a judgment based upon the unpleaded defense, whether or not it was proven. See *M. Loeb Corp. v. Brychek* (1981), 98 Ill. App. 3d 1122, 424 N.E.2d 1193.

Gursoy's final contention is that the trial court erred in denying his motion for a $260,000 set-off against plaintiff's total recovery on both counts. Plaintiff received $260,000 from the settling defendants. Instead of granting a set-off in that amount against the entire $300,000 judgment against defendant, the trial court awarded a set-off to Gursoy only with regard to the $100,000 wrongful death count, leaving him fully liable for the $200,000 survival action verdict.

The first indication in the record that any settlement had been reached appeared on January 20, 1983, when plaintiff petitioned the court to find that $150,000 was a fair, reasonable and proper settlement of the case against defendant Cesar Maniquis only. The petition made no distinction between the wrongful death and survival counts. No action was taken by the trial court on the petition prior to trial. On January 24, 1983, defendant Silverio Agujar was granted summary judgment. On that same date, trial began, but only on plaintiff's counts against Gursoy.

On February 7, 1983, after judgment on the jury verdicts had been rendered, Gursoy made his motion for a set-off of $260,000. A memorandum in support of that motion asserted that $260,000 was the total amount of a settlement reached between plaintiff and Gursoy's remaining codefendants on the day the trial began and that the settling parties had entered covenants not to sue for all claims of plaintiff against Condell Memorial Hospital, Maniquis, Edward D. Hobart, and Arcadio F. Ortis.

On March 16, 1983, plaintiff petitioned the court to find the settlements with Maniquis ($150,000), Hobart ($100,000), and Condell Memorial Hospital ($10,000) to be fair, reasonable and proper. This petition indicated specifically that the monetary settlements came in exchange for covenants not to sue with regard to the wrongful death counts. Plaintiff also sought authorization to voluntarily dis-

miss the survival counts. The same day this petition was filed, the trial court entered an order denying the motion for set-off, dismissing the cause against all of Gursoy's codefendants, and including the following finding:

"The Court specifically finds that counsel for defendant GURSOY was present during the discussion of the allocation of settlement proceeds from the foregoing defendants prior to commencement of trial against defendant GURSOY only."

In a separate order, the trial court approved the settlements pursuant to plaintiff's petition.

On March 23, 1983, pursuant to a motion by Gursoy, the trial court amended its order denying the set-off motion. This amended order added findings that "the total covenants not sue [sic] prior to trial amounted to $260,000 without specific allocation to any particular count of plaintiff's complaint," and that the covenants not to sue which do distinguish between the counts were entered "subsequent to the Trial of this cause."

The parties dispute whether the settlement accepted by the trial court was a "*post facto* allocation of damages" resulting in a double recovery for plaintiff or a pretrial arrangement which was not "memorialized" until after trial. The record does not contain the actual covenants. Based upon the documents in the record, including the findings of the trial court, we must conclude that, while some sort of tentative settlement was reached prior to trial, that pretrial arrangement was not final and did not differentiate between the wrongful death and the survival counts. The jury verdicts were in before the settling parties gave any indication that their money figures were meant to apply only toward the wrongful death claims.

It is well settled that settlement amounts paid by less than all tortfeasors in return for a covenant not to sue must be set off against any judgment incurred by the other tortfeasors. (*Popovich v. Ram Pipe & Supply Co.* (1980), 82 Ill. 2d 203, 209; *Hayes v. Abernathy Taxi Association, Inc.* (1972), 8 Ill. App. 3d 367, 368, 290 N.E.2d 289, 290.) Plaintiff does not dispute this rule, but rather argues that only the wrongful death verdict should be set off because his settlement related only to the wrongful death counts against the settling defendants.

■ Two policies should have prevented the trial court from accepting the post-trial version of the settlement. First, Illinois has a policy of protecting the financial interest of nonsettling parties in a settlement. (*Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d

211, 224.) By permitting the settling parties to stand by while waiting for the jury verdicts to come in before designating what counts the settlement pertained to, the trial court unfairly increased Gursoy's financial burden by making him alone responsible for the survival action.

Second, Illinois has a policy against double recovery by tort plaintiffs. (*Popovich v. Ram Pipe & Supply Co.* (1980), 82 Ill. 2d 203, 208.) In *Popovich*, our supreme court refused to give effect to a settlement agreement to the extent that that agreement would have allowed double recovery. (82 Ill. 2d 203, 209.) Here, the jury was instructed to determine plaintiff's damages with regard to both the wrongful death and the survival action. The settlement approved by the trial court gave plaintiff a total of $460,000, $160,000 more than the total damages determined by the jury.

In light of these policies, the trial court should have granted Gursoy's motion for set-off. Pursuant to our authority under Supreme Court Rule 366(a) (87 Ill. 2d R. 366(a)), we now grant that motion, find that defendant Gursoy is entitled to a set-off of $260,000 from the jury verdicts of January 28, 1983, totaling $300,000 and so order.

In all other respects, the judgment of the circuit court of Lake County is affirmed.


*Affirmed in part, reversed in part, and modified.*


HOPF and NASH, JJ., concur.


SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE LINDBERG delivered the opinion of the court:

■■ Plaintiff seeks a rehearing on the set-off issue. His petition for rehearing relies upon *McDaniel v. Hoge* (1983), 120 Ill. App. 3d 913, 458 N.E.2d 1063, for the proposition that, in the absence of a designation by the parties to the settlement agreement, the decision as to which of several claims a settlement award should be attributed to is a decision best left to the discretion of the trial court. *McDaniel*, in turn, relied upon *Gramse v. Royal Crest Enterprises, Inc.* (1981), 100 Ill. App. 3d 100, 426 N.E.2d 614.

The facts of *McDaniel* and *Gramse* are very similar. In each, a settlement was reached and approved prior to any jury verdict (at

the close of the plaintiff's case-in-chief in *McDaniel*; before trial in *Gramse*). A third party attempted to attach a workmen's compensation lien to the settlement proceeds. The settlement did not specify which of the counts it was meant to satisfy, but did specifically exclude the workmen's compensation lien from its coverage. The trial court found that the settlement was meant to satisfy only those counts whose theory of recovery (Public Utility Act in *McDaniel*; Structural Work Act in *Gramse*) would not be subject to workers' compensation liens. Those counts based on theories subject to lien attachment (wrongful death in *McDaniel*; Survivor's Act in *Gramse*) were found to be excluded from the settlement. In each case, the appellate court affirmed, deferring to the trial court's discretion.

These cases do not control the present one. First, the trial courts in *McDaniel* and *Gramse* had some indication of the settling parties' intent upon which to base their exercise of discretion: the settlements' specific exclusion of the workers' compensation liens. Here, the trial court found that there was no allocation of the settlement to particular counts until after the trial. Second, *McDaniel* and *Gramse* involved settlements completely resolved prior to a trial verdict. Thus, the two policies we relied upon to reverse the trial court here were not at issue in *McDaniel* and *Gramse*. The trial courts were *not* unfair to a nonsettling defendant, as the trial court here was, by permitting the settling defendants to stand by and await the outcome of the trial against their codefendants before indicating the full details of their settlement. Double recovery was *not* evident in *McDaniel* and *Gramse* because there was no jury verdict measuring full damages to which the total recovery by the plaintiff could be compared.

In denying plaintiff's petition for rehearing, we adhere to our original opinion.

NASH and HOPF, JJ., concur.